UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARIAN MILLER, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-02609-JMS-MJD |
| | ) | |
| MADISON COUNTY BOARD OF COMMISSIONERS, | ) | |
| | ) | |
| | ) | |
| *Defendant*. | ) | |

## ORDER

Plaintiff Marian Miller seeks recovery for alleged gender discrimination, retaliation, and hostile workplace environment from her former employer, Defendant Madison County Board of Commissioners ("the County"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"). [Filing No. 1.]  The County has filed a Motion for Summary Judgment, [Filing No. 46], which is ripe for the Court's consideration.

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events.  *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003).  "'Summary judgment is not a time to be coy.'"  *King v. Ford Motor Co.*, 872 F.3d 833, 840 (7th Cir. 2017) (quoting *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017)).  Rather, at the summary judgment stage, "[t]he parties are required to put their evidentiary cards on the table."  *Sommerfield*, 863 F.3d at 649.

The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the nonmoving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

Each fact asserted in support of or in opposition to a motion for summary judgment must be supported by "a citation to a discovery response, a deposition, an affidavit, or other admissible evidence." S.D. Ind. L.R. 56-1(e). And each "citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence." *Id.* The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 572-73 (7th Cir. 2017) (quotations omitted); *see also* Fed. R. Civ. P. 56(c)(3); S.D. Ind. L.R. 56-1(h). Where a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the Court may consider the fact undisputed for purposes of the summary judgment motion. Fed. R. Civ. P. 56(e)(2).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir.

2005).  Fact disputes that are irrelevant to the legal question will not be considered.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II.
### STATEMENT OF FACTS

The following factual background is set forth pursuant to the standards detailed above.  The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made."  *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

**A.  Ms. Miller's Employment by the County**

Beginning in 2011, Ms. Miller was employed by the County at the Madison County Central Dispatch ("MCCD") Center.  [Filing No. 47-5 at 48; Filing No. 47-10 at 4.]  MCCD provides all dispatch services for emergency services in Madison County, including police, fire, and emergency medical services.  [Filing No. 47-1 at 19.]  MCCD is overseen by an Executive Director, who supervises the Deputy Director.  [Filing No. 47-1 at 11.]  During the relevant period, the MCCD Executive Director was Brent Jenson, and the Deputy Director was Jennifer Chambers.  [Filing No. 47-1 at 11; Filing No. 47-5 at 40.]

MCCD employees perform dispatch duties in one of three shifts.  [Filing No. 47-1 at 18.]  Each shift is overseen by a Shift Supervisor, who reports to the Deputy Director.  [Filing No. 47-1 at 11.]  Each Shift Supervisor supervises an Assistant Shift Manager and a Communications Training Officer ("CTO").  [Filing No. 47-1 at 15-17.]  When the Shift Supervisor is unavailable, the Assistant Shift Supervisor acts as the supervisor for that shift.  [Filing No. 47-1 at 17.]

In 2018, Ms. Miller was promoted to the role of Second Shift Assistant Supervisor.  [Filing No. 47-1 at 16.]  The Second Shift Supervisor was Lisa Zent, and Michael Klein was the CTO. [Filing No. 47-1 at 15-17.]

### B.  The Incident with Officer Taylor

On October 16, 2019, Ms. Miller was working at the supervisor's console at MCCD when she was approached by Anderson Police Department ("APD") Officer Taylor.[1]  [Filing No. 47-5 at 24-25; Filing No. 47-5 at 79-83.]  Officer Taylor then cupped and grasped Ms. Miller's right breast twice.  [Filing No. 47-5 at 24; Filing No. 47-5 at 82-83.]  Officer Taylor then said: "sorry for touching your boob."  [Filing No. 47-5 at 24-25; Filing No. 47-5 at 83.]

The day after the incident with Officer Taylor, Ms. Miller told her colleague Salena Tevis what happened.[2]  [Filing No. 47-5 at 33.]  Ms. Tevis, who is married to an APD Officer, offered to have her husband speak to Officer Taylor about the situation.  [Filing No. 47-5 at 102.]

### C.  Ms. Miller's Reporting of Officer Taylor to APD

Later that day, Ms. Miller reported the assault to Ms. Zent, who then contacted Lieutenant Seig of the APD.  [Filing No. 47-5 at 20-21.]  Around twenty minutes later, Lieutenant Seig came to the MCCD office to meet with Ms. Miller and Ms. Zent.  [Filing No. 47-5 at 20-21.]  After Ms. Miller told Lieutenant Seig what had happened, he replied that he could "make this go away right now between the four of us."  [Filing No. 47-5 at 21-22.]  Ms. Miller responded that she wanted to "handle this the right way," and indicated that she wanted to file a misconduct report with the

---

[1] Out of respect for the privacy of non-parties, the Court will utilize only the first name when referring to the individuals involved in the sexual assault allegations implicated in this case.

[2] The record refers to Ms. Tevis as both Salena Tevis and Selena Tevis.  [*Compare* Filing No. 47-5 at 74-75 *with* Filing No. 47-5 at 76.]  However, it is clear from the record before the Court that this is in reference to the same person.

APD.  [Filing No. 47-5 at 22-23.]  Lieutenant Seig responded that Officer Taylor has a wife and two children.  [Filing No. 47-5 at 31.]

About a week later, Ms. Miller was interviewed by APD Officer Mark Cole.  [Filing No. 47-5 at 18.]  During the interview, Ms. Miller felt that Officer Cole attempted to discourage her from pressing charges against Officer Taylor by asking questions such as "[a]re you sure this is what you want to do?" and referencing the fact that her name might appear in the newspaper. [Filing No. 47-5 at 19.]

### D.  Ms. Miller's Post-Reporting Interactions with County Employees

Around this time, Ms. Zent informed Ms. Chambers that Officer Taylor had assaulted Ms. Miller.  [Filing No. 47-1 at 27.]  Ms. Chambers, who is married to APD Sargent Burt Chambers, confirmed that APD was notified of the incident and met with Ms. Miller.  [Filing No. 47-1 at 28-30.]  During the meeting with Ms. Miller, Ms. Chambers offered Ms. Miller services through a victim's advocate and the County's employee assistance program and explained that Ms. Miller could also go to the Indiana State Police, the County Sherriff's Department, or the local prosecutor's office.  [Filing No. 47-1 at 28-30.]  Ms. Chambers also attended a meeting with Ms. Miller at the APD Office to discuss Ms. Miller's allegations against Officer Taylor.  [Filing No. 47-1 at 30.]

After the incident with Officer Taylor, APD officers were not allowed to enter the MCCD control room.  [Filing No. 47-5 at 67-68.]  During this time, several County employees refused to speak to Ms. Miller outside of necessary work-related communications, but Ms. Miller never inquired as to the reason for the change in communication.  [Filing No. 47-5 at 98-101.] Additionally, Ms. Miller was the subject of "rude remarks" from fellow County employees during work.  [Filing No. 47-5 at 67-73.]  Ms. Miller complained about the situation to Mr. Jenson, who told Ms. Miller that he was not going to be personally involved due to an unrelated lawsuit

involving Officer Taylor's wife and that Ms. Chambers would be handling the situation for the County. [Filing No. 47-5 at 36; Filing No. 47-5 at 104-105.] Ms. Miller felt that Ms. Chambers was not competent to resolve her situation because she is married to an APD Officer, but she did not express that concern to either Mr. Jensen or Ms. Chambers. [Filing No. 47-5 at 105.]

### E.  The Selection of the Shift Supervisor

In the fall of 2019, a Shift Supervisor position became available.[3] Three applicants applied for the position, including Ms. Miller and Mr. Klein. [Filing No. 47-1 at 33.] At that time, Mr. Klein had worked for MCCD for just over three years, whereas Ms. Miller had worked for MCCD for over eight years. [Filing No. 47-5 at 48; Filing No. 63-3 at 8.] Ms. Chambers interviewed each candidate and recommended to Mr. Jensen that Mr. Klein be selected for the position. [Filing No. 47-1 at 44-45.] In making her recommendation, Ms. Chambers testified that she was looking for experience working in a dispatch center, the ability to manage a team, and that the candidate was "reliable and dependable with the overall leadership skills." [Filing No. 47-1 at 42.] Ms. Chambers recommended Mr. Klein because he demonstrated a strong work ethic and leadership skills by showing up on time and picking up extra hours outside of his scheduled shifts. [Filing No. 47-1 at 37.] Ms. Chambers testified that the fact that Ms. Miller had complained about Officer Taylor did not factor into her recommendation. [Filing No. 47-1 at 63.]

Ms. Chambers notified Ms. Miller that she had not been selected for the Shift Supervisor position in her office with Ms. Tevis. [Filing No. 47-5 at 110.] Ms. Miller does not recall being given an explanation by Ms. Chambers for why she was not selected for the position but feels that it was because she "told" on Officer Taylor despite having never been told that. [Filing No. 47-5

---

[3] It is not entirely clear from the record if the position at issue was the Second Shift Supervisor or the Third Shift Supervisor. [*Compare* Filing No. 47-1 at 15 *with* Filing No. 63-3 at 17.] However, this inconsistency is not material to the issues before the Court, and the Court need not resolve it.

at 110-112.]   A few weeks later, Ms. Miller resigned from her employment with the County.

[Filing No. 47-5 at 114.]

### F.  Ms. Miller's EEOC Charge and this Lawsuit

In October 2020, Ms. Miller filed a charge of discrimination with the Equal Employment

Opportunity Commission ("EEOC") which alleged that:

> On October 16, 2019, Ms. Miller was sexually assaulted by Officer [Taylor] of the [APD].  This sexual assault constitutes a hostile work environment and/or sex discrimination in violation of Title VII.  Ms. Miller reported the assault to both Madison County and the [APD].  Ms. Miller pressed charges against Officer [Taylor].  It was apparent that people who worked for both Madison County and the [APD] did not want Ms. Miller to press charges against Officer [Taylor].  However, Ms. Miller did so despite the attempts to dissuade her.
>
> ****
> Madison County with the encouragement of the [APD] retaliated against Ms. Miller for reporting the sexual assault by Officer [Taylor] by failing to promote Ms. Miller to Supervisor of the second shift.  Madison County and the [APD] also retaliated against Ms. Miller by making her environment so hostile that she was forced to quit.  In reality, Ms. Miller was constructively discharged by Madison County with the help and blessing of the [APD].

[Filing No. 47-7 at 2.]

After receiving her right to sue letter from the EEOC, Ms. Miller filed this lawsuit against

the County seeking recovery for violations of Title VII.  [Filing No. 1.]  The County has moved

for summary judgment on all of Ms. Miller's claims.  [Filing No. 46.]

### III.
### DISCUSSION

The Court first addresses the issues raised in Ms. Miller's Motion for Leave to File a Sur-

Reply and the scope of Ms. Miller's exhausted claims before turning to the merits of the County's

Motion for Summary Judgment below.

### A.  Ms. Miller's Motion for Leave to File a Sur-Reply

Ms. Miller has filed a Motion for Leave to File a Sur-Reply, which centers around whether the County improperly raised new arguments in its reply brief or whether Ms. Miller improperly raised new claims in response to summary judgment.

In its Reply, the County argues that Ms. Miller's Response impermissibly added two new theories of recovery, which Ms. Miller did not allege before the EEOC or in her Complaint. [Filing No. 73 at 3-4; Filing No. 73 at 12-17.]  First, the County argues that Ms. Miller's Response "adds a new theory" that "another reason [Ms. Miller] was denied the promotion was because she complained . . . that it was uncomfortable for her to potentially have phone communications with [Officer Taylor] after he was assigned a front desk job with the [APD] during the assault charge investigation."  [Filing No. 73 at 2.]  Additionally, the County argues that Ms. Miller "tries to morph her Title VII claim into a sex discrimination claim that was not raised in her [EEOC] charge or this lawsuit."  [Filing No. 73 at 3-4.]  The County argues that while Ms. Miller now alleges that the County "did not want a single mother in the supervisor position," this allegation "appears nowhere in her [EEOC] charge and indeed, is not like or reasonably related to the allegations in the charge because it does not describe the same conduct."  [Filing No. 73 at 14; Filing No. 73 at 16.]

Ms. Miller then sought leave to file a sur-reply, arguing that "[f]or the first time in its summary judgment briefing, [the County] argues for multiple reasons that [she] does not have a sex discrimination failure to promote claim."  [Filing No. 75 at 1.]

The County responded that Ms. Miller's Motion is contrary to Local Rule 56-1(d) because Ms. Miller does not "contend that [the County] cited new evidence" or argue that "she should be allowed to file a [surreply] to address objections to the admissibility of evidence."  [Filing No. 77 at 1.]  The County also argues that Ms. Miller is "incorrect, both factually and legally," that it

raised new arguments upon reply. [Filing No. 77 at 2.] The County contends that it "merely addressed the arguments raised by [Ms. Miller] in her response—including the 'allegations' first raised in her response." [Filing No. 77 at 2.] The County asserts that it was Ms. Miller "who raised a new issue . . . [when she] claimed for the first time in her response that her lack of promotion was for being a single mom who could not work the long hours of a male counterpart." [Filing No. 77 at 2.] The County concludes that "[Ms. Miller's] manipulation of her claims through an improper attempt to add a new claim at the summary judgment stage should not be permitted, nor should her attempt to get the last word through a surreply." [Filing No. 77 at 4.]

Ms. Miller replies that she is not seeking to file a sur-reply pursuant to Local Rule 56-1(d) and, therefore, that rule is "not applicable to this Motion whatsoever." [Filing No. 78 at 2.] Ms. Miller further replies that she has "articulated a sex discrimination claim under Title VII since filing her EEOC Charge" and that this claim was "last articulated in [her] Amended Statement of Claims." [Filing No. 78 at 2.]

"The decision to permit the filing of a surreply is purely discretionary and should generally be allowed only for valid reasons, such as when the movant raises new arguments in a reply brief." *Meraz-Camacho v. United* States, 417 Fed. Appx. 558, 559 (7th Cir. 2011). The Court grants leave to file a surreply only in "limited circumstances," such as when it is necessary to "address new arguments or evidence raised in the reply brief or object[ ] to the admissibility of evidence in the response." *Bernadin v. Marriott Int'l Inc*., 2019 WL 1041333, at *4 (S.D. Ind. Mar. 4, 2019). Here, the Court agrees with the County that it did not assert a new argument in its Reply but instead simply responded to Ms. Miller's allegations "setting for[th] the facts and arguments to support" her claims in her Response. [Filing No. 64 at 13.] Accordingly, Ms. Miller's Motion for Leave to File a Sur-Reply, [Filing No. 75], is **DENIED**.

**B. The Scope of Ms. Miller's Exhausted Claims**

Before addressing the merits of the instant motion, the Court turns to the County's arguments that Ms. Miller improperly advanced new claims in response to summary judgment. In order to recover under Title VII, a plaintiff must "first exhaust [her] administrative remedies by filing charges with the EEOC and receiving a right to sue letter." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). The plaintiff may then file her complaint including "only those claims that were included in her EEOC charge, or that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Id.* (quoting *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005)). Claims are "reasonably related" when: (1) "there is a reasonable relationship between the allegations in the charge and the claims in the complaint"; and (2) "the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).

After exhausting her administrative remedies before the EEOC, a plaintiff may file a complaint for recovery under Title VII that raises "simple, concise, and direct" allegations. *Fed. R. Civ. P. 8(d)(1)*. As a general rule, a plaintiff does not have to plead legal theories, and "when a plaintiff does plead legal theories, [she] can later alter those theories." *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 859 (7th Cir. 2017); *Appleton v. City of Gary, Indiana*, 781 F. App'x 501, 504 (7th Cir. 2019). However, a plaintiff cannot alter "the factual basis of [her] complaint at summary judgment." *BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 900 F.3d 529, 541 (7th Cir. 2018) (quoting *Whitaker v. Milwaukee Cnty., Wisconsin*, 772 F.3d 802, 808 (7th Cir. 2014)).

The Seventh Circuit has explained that "[w]hen a new argument is made in summary judgment briefing, the correct first step is to consider whether it changes the complaint's factual theory, or just the legal theories plaintiff has pursued so far." *Chessie,* 867 F.3d at 860.  When a plaintiff changes its factual theory during summary judgment briefing, the court has the discretion to "refuse to consider the new factual claims." *Id.* at 859–60.  But if the new argument changes only the legal theories being pursued, the "court should consider the consequences of allowing the plaintiff's new theory," including whether it would result in unreasonable delay or add to the cost or difficulty of defending the suit. *Id.; Vidimos, Inc. v. Laser Lab Ltd.,* 99 F.3d 217, 222 (7th Cir. 1996).

Here, Ms. Miller has been remarkably consistent regarding the theory of her case and the factual basis underlying that theory—that is, until the summary judgment briefing.  Starting with her Charge of Discrimination before the EEOC, Ms. Miller alleged that her assault by Officer Taylor constituted a "hostile work environment and/or sex discrimination in violation of Title VII" and that the County retaliated against her for reporting the assault by failing to promote her and "by making her environment so hostile that she was forced to quit." [Filing No. 47-7 at 2.]  Ms. Miller then filed her Complaint, which raised two categories of claims: (1) that her sexual assault by Officer Taylor constituted "a hostile work environment and/or sex discrimination"; and (2) that the County retaliated against her for "pressing charges against Officer [Taylor]" by failing to promote her, creating a hostile work environment, and by forcing her to quit her job. [Filing No. 1 at 2-4.]  In her Amended Statement of Claims, Ms. Miller reiterated that the claims she intended to prove at trial were: (1) hostile work environment; (2) retaliation; (3) constructive discharge due to retaliation; and (4) "failure to promote sex discrimination." [Filing No. 43.]

It was not until Ms. Miller's Response to the County's Motion for Summary Judgment that Ms. Miller deviated from her previous allegations.  First, Ms. Miller withdrew her hostile work environment and constructive discharge claims and argued that only her claims for retaliation and sex discrimination remained.[4]  [Filing No. 64 at 1.]  Then, Ms. Miller advanced two theories of retaliation based on two different alleged protected activities: (1) that the County retaliated against her for reporting the sexual assault by Officer Taylor (the "Reporting Retaliation Claim"); and (2) that the County retaliated against her for complaining of having to work with Officer Taylor following the sexual assault (the "Continued Interactions Retaliation Claim").  [Filing No. 64 at 9-10.]  Finally, Ms. Miller alleged that the County discriminated against her based on her sex and her status as "a single mother of two elementary school age children" when it chose to promote "a less qualified, less experienced, single male without children" (the "Sex Discrimination Claim"). [Filing No. 64 at 12-13.]  The Court addresses each of Ms. Miller's remaining claims in turn.

### 1.  Ms. Miller's Retaliation Claims

There can be no debate, and indeed the County does not debate, that Ms. Miller's Reporting Retaliation Claim is the exact theory that she has repeatedly advanced before the EEOC and this Court.  [*Compare* Filing No. 47-7 *with* Filing No. 1 *and* Filing No. 64.]  Because Ms. Miller has consistently alleged that reporting that Officer Taylor assaulted her resulted in her not being promoted to the Shift Supervisor position, the Reporting Retaliation Claim must be considered on the merits and the Court does so below.

---

[4] Because Ms. Miller has withdrawn her claims for hostile work environment and constructive discharge, these claims are **DISMISSED**.  [Filing No. 64 at 1.]  Accordingly, the County's Motion for Summary as to those claims, [Filing No. 46], is **DENIED AS MOOT**, and the Court need not address the County's arguments related to those claims.

In contrast, Ms. Miller's Continued Interactions Retaliation Claim is an entirely new factual basis for recovery that Ms. Miller advanced for the first time in response to summary judgment. Starting with her Charge of Discrimination, Ms. Miller never alleged to the EEOC that she was required to speak with Officer Taylor on the phone as part of her dispatch duties, that Officer Taylor continued to sexually harass her, or that she requested that her interactions with Officer Taylor cease. [*See* Filing No. 47-7 at 2.] This point is underscored by Ms. Miller's own description of her EEOC Charge, which she describes as alleging "retaliation . . . due to [Ms. Miller] pressing charges on Officer [Taylor]." [Filing No. 1 at 3-4.] By not addressing the allegations underlying this claim in her EEOC charge, Ms. Miller deprived the County of the "opportunity to settle the dispute through conference, conciliation, and persuasion," and did not give the County "some warning of the conduct about which [she] is aggrieved." *Cheek*, 31 F.3d at 500.

Like the absence in the EEOC charge, Ms. Miller failed to articulate this claim in her Complaint and has now identified an entirely new alleged protected activity that she claims that the County retaliated against her for engaging in. The Court finds these allegations represent an attempt to alter the factual basis of her claim, which the Court has the discretion to set aside. *BRC Rubber*, 900 F.3d at 541. Ms. Miller cannot attempt to use summary judgment to *de facto* alter her Complaint after discovery has already been completed and after the County has moved for summary judgment. Accordingly, the Court considers the Continued Interactions Retaliation Claim forfeited.

### 2.  *Ms. Miller's Sex Discrimination Claim*

As with her Continued Interactions Retaliation Claim, the Court finds that Ms. Miller's Sex Discrimination Claim has been forfeited because it is outside the scope of her EEOC Charge. While Ms. Miller did include a sex discrimination claim in her Amended Statement of Claims, Ms.

Miller's sex discrimination claim clearly does not arise out of conduct alleged in her EEOC Charge. At no point prior to her Response to the County's Motion for Summary Judgment does Ms. Miller allege that the County discriminated against her because she is a woman or based on her status as a single mother.  [Filing No. 47-7.]  In fact, Ms. Miller failed to plead any allegations regarding the fact that she is a mother until her Response to the County's Motion.  [Filing No. 47-7.]  It does not follow that this allegation is the kind that could "reasonably be expected to grow out of an EEOC investigation of the allegations in [her retaliatory failure to promote] charge."  *Cheek*, 31 F.3d at 500.  Accordingly, the Court considers Ms. Miller's sex discrimination theory also now forfeited.  *Chessie*, 867 F.3d at 860.

Simply put, the summary judgment stage is "too late in the day to be adding new claims." *Zeidler v. A & W Restaurants, Inc.*, 219 F. App'x 495, 499 (7th Cir. 2007) (quoting *Auston v. Schubnell*, 116 F.3d 251, 255 (7th Cir. 1997)).  Therefore, the County's Motion for Summary Judgment, [Filing No. 46], is **GRANTED** as to Ms. Miller's Continued Interactions Retaliation Claim and as to Ms. Miller's Sex Discrimination Claim.  The Court will address the merits of Ms. Miller's Reporting Retaliation Claim below.

### C.  The County's Motion for Summary Judgment

The County argues that summary judgment is appropriate because Ms. Miller cannot establish that she engaged in protected activity when she reported her sexual assault by Officer Taylor to her manager because Officer Taylor is not employed by the County, and any report "could not implicate any unlawful practice of the County itself."  [Filing No. 49 at 27.]  Even if it was a protected activity, the County argues that Ms. Miller's allegations "fail to rise to the level of 'materially adverse action' as required to establish a retaliation claim."   [Filing No. 49 at 27 (quoting *Lesiv v. Ill. Cent. R.R. Co.,* 39 F.4th 903, 911-12 (7th Cir. 2022)).]  Specifically, the County argues that it "promoted [Mr.] Klein to the supervisor position because [Ms.] Chambers

14

believed he was the best candidate for the position, not because [Ms.] Miller complained about [Officer Taylor]." [Filing No. 49 at 31.] Moreover, the County argues that Ms. Miller "admitted she is not aware of any 'direct' evidence of retaliation . . . Nor has she ever heard—even through rumor or second-hand information—that the fact she did not get the promotion was based on her reporting of [Officer Taylor]." [Filing No. 49 at 31.] Additionally, the County argues that when comparing Ms. Miller to Mr. Klein, he was "more qualified" because he demonstrated "leadership skills and a strong work ethic, as shown by his regular attendance and volunteering for extra hours." [Filing No. 49 at 32.]

Ms. Miller responds that it is "apparent" that she was not promoted to Shift Supervisor in retaliation for complaining about the sexual assault by Officer Taylor. [Filing No. 64 at 9.] Ms. Miller argues that she engaged in a protected activity when she complained of Officer Taylor's "wrongful conduct to both her employer and the [APD]." [Filing No. 64 at 10.] She further argues that the County's "failure to promote [her] is unquestionably an adverse employment action" which is "not disputed by the parties." [Filing No. 64 at 10.] Ms. Miller argues that there are "a number of facts which support a finding of causation," including the timing of the decision not to promote her. [Filing No. 64 at 10-11.] Additionally, Ms. Miller argues that she went up against the "Blue Wall" by reporting Officer Taylor's conduct because several County employees who were married to APD Officers dissuaded her from reporting Officer Taylor. [Filing No. 64 at 11-12.] Finally, Ms. Miller argues that the individual who decided not to promote her, Ms. Chambers, is married to an APD Officer and was aware of her complaints about Officer Taylor. [Filing No. 64 at 11-12.]

The County replies that Ms. Miller's "report to her manager regarding [Officer Taylor's] conduct could not implicate any unlawful practice of the County itself, nor could the County be

expected to have violated her rights under Title VII at the time of the report." [Filing No. 73 at 9-10.] The County reiterates its argument that Ms. Miller cannot establish but-for causation, "which requires evidence of retaliatory motive on the part of [Mr.] Jensen . . . [who] was the decision maker relative to [Mr.] Klein being selected for the promotion" over Ms. Miller. [Filing No. 73 at 10.] Additionally, the County argues that Ms. Chambers' "words and actions nullify" any theory that Ms. Chambers was acting with intent to harm Ms. Miller. [Filing No. 73 at 11.] Specifically, the County argues that Ms. Chambers offered Ms. Miller services through a victim's advocate and through the County's employee assistance program; explained that Ms. Miller could also go to the Indiana State Police, the County Sheriff's Department, or the local prosecutor's office; and attended a meeting with Ms. Miller at the APD Office to discuss Ms. Miller's allegations against Officer Taylor. [Filing No. 73 at 10-11.] Additionally, the County reiterates that it had a legitimate reason to promote Mr. Klein over Ms. Miller. [Filing No. 73 at 11-12.]

Title VII prohibits retaliation against an employee because she "has made a charge, testified, assisted, or participated in any manner in an investigation" of an employment practice prohibited by Title VII. 42 U.S.C. § 2000e-3(a). In order to prevail on a claim of retaliation, Ms. Miller must present evidence that, when construed in her favor and giving her the benefit of reasonable inferences, would allow a reasonable jury to find that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) her protected activity and the adverse action were causally connected. *Runkel v. City of Springfield*, 51 F.4th 736, 746 (7th Cir. 2022); Khungar v. Access Cmty. Health Network, 985 F.3d 565, 578 (7th Cir. 2021). In doing so, Ms. Miller must "muster enough direct and/or circumstantial evidence to show that her employer's action was retaliatory." *Crain v. McDonough*, 2023 WL 2546446, at *4 (7th Cir. Mar. 17, 2023) (internal citation omitted). Circumstantial evidence may include "suspicious timing . . .

or evidence the employer's proffered reason for the adverse action was pretextual." *Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019) (citation omitted).  In order for Ms. Miller's claim to succeed, "the record 'must permit the factfinder to conclude the employer's retaliatory animus played a part in [the] adverse employment action.'" *Crain*, 2023 WL 2546446, at *4 (quoting *Huff v. Buttigieg*, 42 F.4th 638, 647 (7th Cir. 2022)).

### 1. Protected Activity

The County argues that a reasonable jury could not find that Ms. Miller engaged in protected activity when she reported her sexual assault by Officer Taylor to her manager because he is not a County employee.  [Filing No. 49 at 27.]  The Court disagrees.  A protected activity for purposes of Title VII is "some step in opposition to a form of discrimination that the statute prohibits." *O'Leary*, 657 F.3d at 631.  The Seventh Circuit has explained that it is "not necessary that the employee opposed a practice that is actually prohibited by Title VII; the employee need only have a good-faith and reasonable belief that [she] is opposing unlawful conduct." *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.,* 860 F.3d 494, 501 (7th Cir. 2017) (internal quotations omitted).

The fact that Officer Taylor was not employed by the County does not foreclose Ms. Miller's retaliation theory.  Numerous Title VII cases involve employees' complaints of misconduct by third parties to their employers.[5]  *See, e.g., Gardner v. CLC of Pascagoula, L.L.C.,* 915 F.3d 320, 322 (5th Cir. 2019) (denying summary judgment on nurse's claims of harassment by assisted living facility resident); *Equal Emp. Opportunity Comm'n v. Costco Wholesale Corp.,*

---

[5] The County also argues that it can "only be responsible for acts of non-employees if the County was negligent in failing to remedy or discover [Officer Taylor's] conduct."  [Filing No. 49 at 27.] However, Ms. Miller does not seek recovery from the County based upon the acts of a third party but, rather, her retaliation claim is premised upon the County's actions in response to her decision to report Officer Taylor's misconduct.  Accordingly, this argument is inapposite.

903 F.3d 618, 624 (7th Cir. 2018) (denying summary judgment on employee's hostile workplace claim based on harassment by customers); *Pickett v. Sheridan Health Care Ctr*., 610 F.3d 434 (7th Cir.2010) (holding that employee complaints about harassment by non-employees are a protected activity); *Lockard v. Pizza Hut, Inc*., 162 F.3d 1062, 1067-72 (10th Cir. 1998) (finding employer liable for harassment of employees by customers); *see also Wiseman v. AutoZone, Inc.,* 819 F. Supp. 2d 804, 819 (N.D. Ind. 2011) (denying summary judgment on employee's claim of retaliation after complaining of harassment by "regular customer"); *Kudatzky v. Galbreath Co*., 1997 WL 598586 (S.D.N.Y. 1997) (denying summary judgment on retaliatory discharge claim asserted by employee reporting harassment by a corporate client). Here, Ms. Miller has introduced evidence that she reported to her supervisor that she was sexually assaulted while at work. [Filing No. 47-5 at 20.] This is sufficient to meet her burden as to the protected activity element of her claim. *See O'Leary,* 657 F.3d at 631.

### 2. *Adverse Employment Action*

While it is not entirely clear from the briefing, the County seems to concede that the alleged failure to promote Ms. Miller qualifies as an adverse employment action. [*See* Filing No. 73 at 10 (noting that an adverse employment action "must involve a significant change in employment status, such as . . . failing to promote").] In any event, the Court finds that the County's alleged failure to promote Ms. Miller constitutes an adverse employment action for purposes of Title VII. In the context of a retaliation claim, an employment action may be considered "materially adverse" if an employee "would be dissuaded from engaging in the protected activity." *Lesiv,* 39 F.4th at 912 (internal quotations omitted). It is well established that the failure to promote can be an adverse employment action for purposes of Title VII. *See, e.g., Hill v. Potter,* 625 F.3d 998, 1003 (7th Cir. 2010); *Jackson v. County of Racine,* 474 F.3d 493, 501 (7th Cir. 2007); *Nichols v. S.*

*Illinois Univ.-Edwardsville*, 510 F.3d 772, 783 (7th Cir. 2007); *Johnson*, 325 F.3d at 897.  Here, Ms. Miller has introduced evidence that she applied for an open Shift Supervisor position, that she interviewed for the position, and that the County ultimately failed to promote her.  [Filing No. 47-1 at 54-55; Filing No. 47-5 at 48; Filing No. 63-3 at 8.]  Accordingly, she has met her burden as to this element of her claim.

### 3.   *Causal Connection*

Finally, the County argues that summary judgment is appropriate because Ms. Miller cannot establish causation.  In order for her retaliation claim to succeed, Ms. Miller must show that her protected activity was "the but-for cause" of the adverse employment action, meaning that "the adverse action would not have happened without the [protected activity]."  *Mollett v. City of Greenfield*, 926 F.3d 894, 897 (7th Cir. 2019).  Causation may be shown through direct evidence, which "would entail something akin to an admission by the employer ('I'm firing you because you had the nerve to accuse me of sex discrimination!')."  *O'Leary*, 657 F.3d at 630–31.  Causation can also be established by "circumstantial evidence, which includes, for example, 'suspicious timing, a pretextual explanation for the termination, and evidence that similarly situated employees were treated differently.'  This list is not exclusive; the plaintiff can point to any 'other evidence from which an inference of discriminatory intent might be drawn.'"  *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018) (quoting *Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1021 (7th Cir. 2016)).  Here, Ms. Miller points to suspicious timing and argues that the County's explanation for promoting Mr. Klein over her was pretextual.  The Court addresses both causation theories in turn.

### a.   Suspicious Timing

Ms. Miller argues that the close timing between when she reported Officer Taylor and when the County failed to promote her establishes causation.  The Seventh Circuit has explained

that "[t]emporal proximity between protected activity and an adverse employment action can support an inference of causation between the two." *Jokich v. Rush Univ. Med. Ctr.*, 42 F.4th 626, 634 (7th Cir. 2022).  However, suspicious timing alone rarely establishes causation. *Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931, 937 (7th Cir. 2022) (citing *Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 898 (7th Cir. 2015)).  "For an inference of causation to be drawn solely on the basis of a suspicious-timing argument, [courts] typically allow no more than a few days to elapse between the protected activity and the adverse action." *Khungar*, 985 F.3d at 578-79.  In contrast, an inference of retaliation "can be weakened by 'a lengthy time period between the protected activity and the alleged retaliation.'" *Alamo v. Bliss*, 864 F.3d 541, 556 (7th Cir. 2017) (quoting *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014)); *see also Lalvani v. Cook Cnty., Illinois*, 269 F.3d 785, 790 (7th Cir. 2001) ("As the time separating the protected conduct and the adverse employment action grows, the causal inference weakens and eventually time becomes the plaintiff's enemy.").  Here, nearly two months passed between Ms. Miller's complaint and the alleged retaliation.  [*See* Filing No. 47-1 at 27; Filing No. 47-5 at 110.]  This period is insufficient, without more, to support an inference of causation.  *See Khungar*, 985 F.3d at 578–79.  However, as discussed further below, Ms. Miller does point to additional evidence that, when considered singularly and in combination with her suspicious timing argument, may allow a reasonable factfinder to infer causation.

b.  Pretextual Explanation

Additionally, Ms. Miller argues that the County's proffered reason for failing to promote her was pretextual.  Pretext means "a fabrication, designed to conceal an unlawful reason" and occurs where "deceit [is] used to cover one's tracks." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 684 (7th Cir. 2000) (citation omitted).  To demonstrate pretext, a plaintiff can present

evidence showing that: (1) the defendant was "'more likely than not motivated by a discriminatory reason;'" or (2) the defendant's stated reason is not credible. *Alexander v. Wisconsin Dep't of Health & Family Servs.*, 263 F.3d 673, 682 (7th Cir. 2001) (quoting *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1039 (7th Cir. 1993)). To survive summary judgment, the plaintiff must provide "evidence from which a rational trier of fact could infer that the employer's stated reasons for taking the adverse action were lies." *Alexander*, 263 F.3d at 683. When considering if "the employer's reason can be characterized as pretextual," the Court does not "evaluate whether the employer's proffered justification was accurate or even whether it was unfair" but instead solely focuses on "whether the employer's stated reason can be characterized as a falsehood rather than an honestly held belief." *Robertson v. Dep't of Health Servs.,* 949 F.3d 371, 378 (7th Cir. 2020); *see also Seymour-Reed v. Forest Pres. Dist. of DuPage Cnty.*, 752 F. App'x 331, 335 (7th Cir. 2018) ("[A] pretext analysis evaluates the honesty of the employer's explanation, not its validity or reasonableness."). Therefore, to meet her burden, Ms. Miller "must identify such weaknesses, implausibilities, inconsistencies, or contradictions in [the County's] stated reason that would permit a reasonable person to conclude that the stated reason was unworthy of credence." *Harper v. C.R. England, Inc.*, 687 F.3d 297, 311 (7th Cir. 2012) (cleaned up).

Here, the Court concludes that Ms. Miller has presented sufficient evidence to create a genuine factual dispute concerning whether the proffered reason for the County's failure to promote her—that Mr. Klein was a more qualified candidate—is pretextual. In determining which candidate to recommend for the open Shift Supervisor Position, Ms. Chambers identified three factors that applicants were evaluated based upon: (1) experience working in a dispatch center; (2) the ability to manage a team; and (3) "overall leadership skills." [Filing No. 47-1 at 42.] With respect to the first factor, Ms. Chambers testified that experience working in the dispatch center

was "very important." [Filing No. 47-1 at 41.] However, Ms. Miller has introduced evidence that she had more than twice the experience that Mr. Klein had working in a dispatch center. [Filing No. 47-5 at 48; Filing No. 63-3 at 8.] With respect to the applicant's ability to manage a team, Ms. Miller has introduced evidence that shows that she regularly acted as the Shift Supervisor in Ms. Zent's absence, but Mr. Klein "infrequently" acted as a supervisor. [Filing No. 63-3 at 9; Filing No. 63-6 at 1.] Moreover, Ms. Miller has also introduced evidence that she managed MCCD employees in her role as Assistant Supervisor, while Mr. Klein did not do so in his role as CTO. [Filing No. 47-1 at 18; s*ee also* Filing No. 63-3 at 23-25 (Mr. Klein describing other County employees being promoted from the CTO position to the Assistant Shift Supervisor position).]

Ultimately, Ms. Chambers testified that Mr. Klein was selected because he demonstrated "strong leadership skills," as evidenced by the fact that he rarely took days off, showed up on time, and picked up extra hours outside of his scheduled shifts. [Filing No. 47-1 at 37.] However, Ms. Chambers also testified that she did not know if Ms. Miller had ever been tardy for work, that she did not know if Ms. Miller had ever picked up extra shifts, and that she did not recall if Ms. Miller had unexcused absences. [Filing No. 47-1 at 34; Filing No. 47-1 at 42-47; Filing No. 47-1 at 61.] Additionally, Mr. Klein testified that while he had not taken any days off, he had been tardy "[m]aybe a few times." [Filing No. 63-3 at 14.]

The inconsistencies between the County's stated explanation for promoting Mr. Klein over Ms. Miller and the undisputed evidence render the Court unable to resolve whether the County's explanation was pretextual without the aid of factual determinations. The Court takes no position regarding the evidentiary value of the undisputed evidence except to say that the evidence is not so one-sided that a reasonable jury could only reach one conclusion.

22

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Construing the facts and all reasonable inferences in Ms. Miller's favor—as the Court is required to do at this procedural posture—Ms. Miller has presented sufficient evidence to create a genuine issue of material fact for trial concerning her retaliation claim. Consequently, the County's motion for summary judgment is **DENIED** as to Ms. Miller's Reporting Retaliation Claim.

### D.  The Scope of Damages

The Court concludes by noting the scope of recoverable damages for Ms. Miller's remaining claim.  The Seventh Circuit has explained that "an employee who has been discriminatorily denied an opportunity for a promotion ordinarily may not collect backpay for periods beyond that employee's voluntary resignation unless the employee demonstrates that she was constructively discharged by the employer." *Hertzberg v. SRAM Corp.*, 261 F.3d 651, 660 n.8 (7th Cir. 2001).  Here, Ms. Miller has abandoned her claim that she was constructively discharged. [Filing No. 64 at 1.] Accordingly, Ms. Miller will not be permitted to recover damages for the period beyond her voluntary resignation to the extent that she is able to recover damages for her Reporting Retaliation Claim.

### IV.
#### CONCLUSION

For the foregoing reasons, the Court rules as follows:

- Ms. Miller's Motion for Leave to File a Sur-Reply, [75], is **DENIED**.

- Ms. Miller's hostile work environment and constructive discharge claims are **DISMISSED WITH PREJUDICE**;[6]

---

[6] Generally, an attempt to voluntarily dismiss only certain counts of a complaint should be treated as a motion to amend the complaint rather than a motion to dismiss.  *See* 9 Charles Alan Wright

- The County's Motion for Summary Judgment, [46], is **GRANTED IN PART** and **DENIED IN PART** as follows:
    - The Motion is **GRANTED** as to Ms. Miller's Continued Interactions Retaliation Claim and as to Ms. Miller's Sex Discrimination Claim;
    - The Motion is **DENIED AS MOOT** as to Ms. Miller's abandoned hostile work environment and constructive discharge claims; and
    - The Motion is **DENIED** as to Ms. Miller's Reporting Retaliation Claim, which **SHALL PROCEED.**

No partial final judgment will enter at this time. The Court requests that the Magistrate Judge confer with the parties in an attempt to reach an agreed resolution short of trial.

Date: 4/7/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record.**

---

& Arthur R. Miller, *Federal Practice and Procedure* § 2362 (3d ed. 2009) ("A plaintiff who wishes to drop some claims but not others should do so by amending his complaint pursuant to Rule 15.") However, Ms. Miller did not move to withdraw part of her claims until after the County had moved for summary judgment and incurred the costs of defending against those claims. When a plaintiff withdraws a claim in response to summary judgment, courts within this Circuit typically dismiss these claims with prejudice because "it would not be fair at this point to leave open even a remote possibility that defendants might face this claim in some other forum." *Bibbs v. Newman,* 997 F.Supp. 1174, 1177 (S.D. Ind. 1998); *see also, DuBose v. McHugh,* 2014 WL 10175999, at *2 (S.D. Ill. Jan. 10, 2014); *Swartz v. Wabash Nat'l Corp.,* 674 F. Supp. 2d 1051, 1057 (N.D. Ind. 2009). In keeping with this precedent, Ms. Miller's hostile work environment and constructive discharge claims are dismissed with prejudice.